IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Leo S., <br><br> Plaintiff, <br><br> v. <br><br> Frank J. Bisignano, <br> Commissioner of Social Security, <br><br> Defendant. | Case No.: 25-cv-50153 <br><br> Magistrate Judge Margaret J. Schneider |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Leo S., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

This matter came before Administrative Law Judge ("ALJ") Lana Johnson on remand from the Appeals Council following remand from this Court. Pursuant to the Court's remand order, the Appeals Council directed the ALJ to issue a new decision for the time period prior to October 25, 2019. R. 871. This Court's prior decision held that the ALJ's residual functional capacity failed to explain how Plaintiff's limitations in concentration, persistence, and pace were accommodated by the finding that he could accomplish "simple" work. *Id*.

On July 9, 2024, ALJ Johnson held a telephonic hearing. Plaintiff, represented by counsel, appeared and testified at the hearing, as did Michael Lace, Psy.D., an impartial medical expert. *Id*. A supplemental hearing was held on December 2, 2024. At that hearing, Susan Entenberg, an impartial vocational expert, appeared and testified. *Id*. Plaintiff and Plaintiff's counsel were present at the second hearing as well. At both hearings, Plaintiff confirmed his amended alleged onset date as October 26, 2016. The prior ALJ decision in this case (dated November 3, 2020) found Plaintiff disabled beginning October 25, 2019. The Appeals Council vacated the unfavorable portion of the ALJ's prior decision. The present appeal addresses the closed period of October 26, 2016, through October 24, 2019. *Id*. On January 3, 2025, the ALJ issued a written opinion denying Plaintiff's claims for disability and disability insurance benefits. R. 871-884. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [9]. Now before the Court are Plaintiff's

motion to reverse or remand the Commissioner's decision [13], Defendant's response and motion for summary judgment [15], and Plaintiff's reply brief [16].

### B. The ALJ's Decision

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of October 26, 2016. R. 874. At step two, the ALJ found that Plaintiff had the following severe impairments: depression; attention-deficit hyperactivity disorder ("ADHD"); anxiety; post-traumatic stress disorder ("PTSD"); obesity; and degenerative joint disease of the bilateral knees. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 874-76.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work but with the following limitations: never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch, and crawl; understand, remember, and carry out routine instructions; never perform fast paced production requirements, such as on an assembly line; able to adapt to few changes in a routine work setting; and able to tolerate occasional interaction with supervisors, coworkers, and the general public. R. 877-82. At step four, the ALJ found that Plaintiff had no past relevant work. R. 882. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 883-84. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from the amended alleged onset date of October 26, 2016, through October 24, 2019. R. 884.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads

to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified) (citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff presents multiple issues for the Court's review: (1) the ALJ failed to address the training period conflict in Plaintiff's RFC; (2) the VE's SkillTRAN testimony was insufficient; (3) Plaintiff was denied due process at step 5; (4) the ALJ committed a 16-3p error; and (5) the ALJ failed to address Plaintiff's obesity in the RFC. As detailed below, the Court finds no error in the ALJ's decision and accordingly affirms the decision.

**Training period and the RFC**

Plaintiff first argues that despite bringing the issue to the ALJ's attention, the ALJ failed to address what Plaintiff contends is a training period conflict in the RFC. Plaintiff's RFC provides in part that he is only able to tolerate occasional interaction with supervisors, coworkers, and the general public. The VE testified that there were jobs in the national economy that Plaintiff could perform, based on his age, education, work experience, and RFC. Those jobs included hotel housekeeper, sorter, and inspector/packer. Each of these jobs qualifies as a specific vocational preparation level ("SVP") 2. An SVP is the amount of time required for a typical person to receive the training necessary to perform at the designated job. *Dictionary of Occupational Titles, Appendix C*. An SVP 2 job requires "anything beyond short demonstration up to and including 1 month" of training. "On-the-job-training" is defined as "serving as learner or trainee on the job under the instruction of a qualified worker." *Id*. Plaintiff takes the position that the failure to include a training period in Plaintiff's RFC was error in that there was no evidence that Plaintiff would be able to successfully complete a training period that would include face-to-face contact with a trainer due to his mental health limitations. In support of this argument, Plaintiff cites to the testimony of Michael Lace, Psy.D., the impartial medical expert. Plaintiff relies on Dr. Lace's testimony that Plaintiff could have "some difficulty working closely with others, completing a normal workday amid a lot of other people," R. 951, and that working "face to face with a person…would be overwhelming for [Plaintiff]." R. 958. Plaintiff further cites to Dr. Lace's testimony regarding references to Plaintiff's suicidal ideation and auditory and visual hallucinations, R. 954, and his marijuana use, R. 955, 957. As to the VE, Plaintiff cites to her testimony regarding interaction with others at work that "to have infrequent interaction with any

3

– you know all other individuals. It's just realistic So I would have to say no work at that point." R. 902.[1] Plaintiff argues remand is required on this issue.

However, Plaintiff's argument does not take into account the full context of the record evidence. Regarding Dr. Lace's testimony, Plaintiff fails to provide the Court with an accurate summary of all of his testimony. After providing a general overview of Plaintiff's mental health records (which, as noted above, included findings that Plaintiff would experience difficulties at work due to his serious mental health issues), Dr. Lace noted that "[t]here would be some significant limitations based on the record," no listing would be met, he would be limited to no fast-paced production requirements, and limited to routine tasks. R. 948-49. Yet when questioned about Plaintiff's moderate limitation as to occasional interactions with coworkers, supervisors, and the general public, Dr. Lace testified: "[t]here are some references…where it was suggested that there could be some difficulty working closely with others, completing a normal workday amid a lot of other people, and I think that's supported pretty consistently throughout the record, but again for this specific time period, there's not a lot of specific information about that. But I think moderate is accurate." R. 951. Dr. Lace further testified that he saw no need for "off-task time" to get away from others in a workday: "Within the confines of the RFC that I provided, based on the record, I wouldn't see any need for that." R. 959. This testimony is consistent with the RFC crafted by the ALJ that Plaintiff would be capable of tolerating "occasional interaction with supervisors, coworkers and the general public" R. 876-77, and does not require a restriction that Plaintiff would be unable to participate in a brief training period to satisfy an SVP 2 job.

As to the VE, she was directly questioned about the need for a training period in relation to the qualifying jobs. When asked if work would be precluded during a brief training period (which would include contact with a coworker or supervisor), the VE testified the trainer "is not spending the entire day training them," "it would be more occasional, two and half, three hours a day of intense training as opposed to a full day of that, " and "[y]ou're going to have more interaction, obviously when you're in training….[b]ut in my experience, they're not, you know, spending 100% of the day with one person working with them." R. 922-23. This issue and the testimony of both the medical expert and the VE were squarely before the ALJ at the time he crafted Plaintiff's RFC. The Court finds that the ALJ adequately considered the training periods required in crafting the RFC and the RFC is supported by substantial evidence.

**VE's SkillTRAN testimony**

Next, Plaintiff argues the VE's SkillTRAN testimony was insufficient. Specifically, Plaintiff complains that by citing only the use of SkillTRAN for step 5 job numbers, the VE failed to explain how she used her knowledge and experience to arrive at the job number estimates that the ALJ used to conclude Plaintiff was not disabled.

At step 5, the Social Security Administration "bears the burden of showing that a significant number of other jobs are available to the claimant." *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020). At this step, ALJs often rely on VEs to estimate the number of jobs that exist in significant numbers in the national economy for an individual with the claimant's experience and limitations. 20 C.F.R. § 416.966(e). The substantial evidence standard requires ALJs to "ensure

---

[1] In his brief, Plaintiff cites to the VE's testimony as: "It's just not realistic." This is a misquote.

that the approximation is the product of a reliable method." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). When a claimant challenges a VE's estimate, ALJs "must require the VE to offer a reasoned and principled explanation" of the method used to produce the estimate. *Id*. at 970. Incorporated into the ALJ's step 5 decision is the VE's conclusion that there were occupations Plaintiff could perform in significant numbers in the national economy. Those occupations included: hotel housekeeper, unskilled, SVP 2 position, generally performed at light level with 200,000 jobs in the national economy; sorter, unskilled SVP 2 position, generally performed at light level with 115,000 jobs in the national economy; and inspector/packer, unskilled, SVP 2 position, generally performed at light level, with 6,000 jobs in the national economy. R. 883.

In this case, Plaintiff claims that the VE's explanation of the method she used for producing the job-number estimates was insufficient. Counsel for Plaintiff questioned the VE about her methodology at the supplemental hearing. The VE testified that she used SkillTRAN's Job Browser Pro program to estimate the number of available jobs in the national economy for an individual with Plaintiff's experience and limitations. R. 904. The VE also provided a brief explanation of SkillTRAN's methodology. R. 911-13. She stated that the program compiles its job numbers from sources including the Occupational Employment Survey ("OES") from the Bureau of Labor Statistics. R. 912. She explained that the program then examines each DOT occupation and related DOT code and cross-references this to assign an industry code to each occupation. This template then prepares DOT specific estimates of employment numbers. *Id*. She testified that she used the SkillTRAN template and her professional education, training, and experience, to identify jobs appropriate to the hypothetical RFC provided by the ALJ. R. 900-02, 908-19. Although the VE could have provided a more detailed explanation of the program's methodology, the ALJ was entitled to find that the VE's use of the SkillTRAN software, combined with her professional experience, produced sufficiently reliable estimates. *Case v. Kijakazi*, No. 22 CV 2379, 2023 WL 4882880, at *3 (7th Cir. Aug. 1, 2023) ("The inability of the vocational expert to precisely explain the software's algorithms does not render his explanation unreliable."). Additionally, courts have consistently held that SkillTRAN/Job Browser Pro are well-accepted sources in the vocational field and consistently relied upon. "The Seventh Circuit has repeatedly affirmed ALJs' reliance on vocational expert testimony using the SkillTRAN approach." *Daniel L. v. Dudek*, No. 24 C 9328, 2025 WL 1134217, at *11 (N.D. Ill. Apr. 16, 2025) (citing *Chavez v. O'Malley*, 94 F.4th 1016, 1025 (7th Cir. 2024)). The Court is unpersuaded by Plaintiff's efforts to criticize the VE's testimony and methodology and finds the ALJ's findings at step 5 supported by substantial evidence.

**Due process at step 5**

Plaintiff next argues that he was denied due process "because the ALJ both enforced the substantial evidence burden more harshly at Steps 1-3 than at Step 5 and because the ALJ did not proffer any of the vocational evidence to Sisti or give him an opportunity to review, comment, or rebut the job incidence data which the ALJ relied upon at Step 5." [13], pp. 13-14. This argument is ambiguous and difficult to understand, or at the very least, repetitive of Plaintiff's previous argument. The only support Plaintiff provides for the position that the ALJ "enforced the substantial evidence burden more harshly at Steps 1-3 than at Step 5," is the comment that the ALJ "explained that the application of the burden at Step 3 for example, required the record evidence to 'fully substantiate' the claimant's testimony and allegations of disability." Plaintiff cites to R.

5

878 in support of this argument. [13], p. 14. First, it is the responsibility of the court to determine if the findings of the ALJ are supported by substantial evidence. 42 USC § 405(g). It is difficult for the court to follow Plaintiff's argument that the ALJ "enforced the substantial evidence burden more harshly at Steps 1-3 than at Step 5." Additionally, because Plaintiff provides no support for this position, the Court is unable to fully analyze the argument. Nevertheless, the Court finds that the ALJ's decision is supported, at all steps, by substantial evidence. As to the argument that the ALJ failed to give Plaintiff the opportunity to rebut the "job incidence data" the ALJ relied on at step 5, the Court notes that Plaintiff's counsel extensively questioned the VE at the hearing regarding her methodology and process in determining job numbers in this matter. R. 903-925. Additionally, counsel made objections related to this in his post hearing brief to the ALJ. R. 1254-58. Further, the Court has found that the ALJ's findings at step 5 supported by substantial evidence. Finally, an argument founded in a due process violation is a high bar and not met in this case. "This court has rejected allegations that due process is violated when isolated parts of an ALJ's conduct were challenged but the record as a whole demonstrated fundamental fairness…It is only after a petitioner has demonstrated that the decisionmaker displayed deep-seated and unequivocal antagonism that would render fair judgment impossible that the presumption is rebutted, the findings set aside, and the matter remanded for a new hearing." *Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007) (citations and quotations omitted). Plaintiff has failed to demonstrate a violation of due process and the Court rejects his attempts at this argument.

**16-3p argument**

Plaintiff makes a brief argument that the ALJ erred by finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully consistent with the record. Specifically, Plaintiff argues that the ALJ cited to no specific incidents in the record to support this conclusion. The Court finds otherwise.

Pursuant to SSR 16-3p, ALJs are to "evaluate the intensity and persistence of an individual's symptoms so [they] can determine how symptoms limit ability to perform work-related activities." Here, the ALJ's decision included multiple references to Plaintiff's subjective symptoms and analyzed them in conjunction with the record evidence. The decision noted that Plaintiff testified to daily activities such as an ability to clean, including sweeping mopping, and vacuuming, although he noted he was not very good at these chores. Plaintiff stated that he was able to do laundry and wash dishes, as well as grocery shop and cook. R. 876. Additionally, the ALJ decision included detailed excerpts from Plaintiff's testimony regarding his mental health, including his descriptions of his depression, anxiety, PTSD, ADHD, dyslexia, and sleep issues, R. 877-78, and also details from Plaintiff's medical reports – both mental and physical health – that indicate normal examinations, alert and oriented affect, minimal treatments, lack of hospitalizations, competency at home, mild limitations, socialization, and lack of cognitive disorder or low level functioning. R. 878-80. In his argument, Plaintiff provides no specific examples of points of error in the ALJ's decision. The Court finds that the ALJ did a more than adequate job of acknowledging and representing Plaintiff's subjective symptoms as well as accurately including record evidence to support the finding that Plaintiff's symptoms were not fully consistent with the record. Ultimately, Plaintiff "has not shown that the ALJ's evaluation of [her] symptoms" was "patently wrong." *Michelle V. v. Kijakazi*, No. 21 CV 5979, 2023 WL 2390541, at *3 (N.D. Ill. March 7, 2023) (quoting *Horr v. Berryhill*, 743 Fed Appx. 16, 19-20 (7th

Cir. 2018)). Accordingly, the Court rejects Plaintiff's argument that the ALJ erred under SSR 16-3p.

**Obesity in the RFC**

Finally, Plaintiff briefly argues that the ALJ erred by not addressing Plaintiff's obesity in the RFC. Plaintiff contends that it was error for the ALJ to not explicitly address how Plaintiff's obesity might exacerbate his other impairments and why he would not be limited to sedentary work despite his obesity.

In her decision, the ALJ specified Plaintiff's obesity as a severe impairment at step 2. R. 874. At step 3, the ALJ acknowledged that SSR 19-2p allows that obesity may medically equal a listing due to functional limitations caused by this impairment. R. 875. The ALJ noted that under SSR 17-2p, the record must contain a prior administrative medical finding or medical expert evidence to support a medical equivalency. The ALJ then found that there was neither an administrative finding nor medical expert evidence in the record to support Plaintiff's obesity as equaling a listing. *Id*. Plaintiff provides nothing in her briefs to question these findings. As noted by Defendant, Plaintiff does not bring to the Court's attention evidence of any limitation brought on by Plaintiff's obesity or any explanation as to how his obesity has affected any of his abilities that were overlooked in the ALJ's decision. "[A]n ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how [his] obesity hampers [his] ability to work." *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (citations and quotations omitted). The Court finds that the ALJ properly considered Plaintiff's obesity and did not err in not including a related limitation in Plaintiff's RFC.

## CONCLUSION

For the foregoing reasons, the decision below is affirmed. Final judgment will be entered accordingly.

Date: January 9, 2026          ENTER:

*Margaret J. Schneider*
United States Magistrate Judge